Curia, per Johnston, Chancellor.
The Court deems it unnecessary to examine the grounds upon which the Chancellor has put the decree, (with respect to which there might be a diversity of opinion among us,) conceiving that the statute of limitations, which was pleaded and relied on upon the trial, is sufficient, of itself, to defeat the bill. By the evidence, it appears that the husband of the dowress died in 1823 ; that his executor, thereupon, took possession, and held till 1827, when the land was sold by the sheriff to Howard; that Howard, or his tenants, had continued possession from his purchase till December, 1830, when the defendant came in, either by purchase from Howard, or in virtue of his wife’s inheritance from Howard, (the evidence is not explicit on this point,) and held until the filing of the bill. In stating that Howard, or his tenants, held continued possession from the time of his purchase until December, 1830, I am not unmindful of the evidence that Inglesby, one of his tenants, yielded up his possession to Howard in December, 1829, and that Howard, himself did not actually occupy the premises until the following March. But even if no other tenant had been put in for the intermediate time, it is not conceived that Howard’s possession would have been broken. Where the occupant of land leaves it for a time, animo revertandi, his possession continues during such occasional absence; and so, I apprehend, if a tenant quits the premises, the landlord is to be regarded as still in possession, if by taking possession within a reasonable time, or putting in another tenant as soon as one can be procured, he gives evidence that he does not intend to abandon the land. Here the tenant went out when the crop was gathered, and the landlord went in at that season of the next year when planting operations usually begin. Possession is matter of fact, and therefore of evidence; and here was no greater evidence of abandoning possession, than would exist where a planter withdraws his hands from one plantation to an *38 other, during the winter, and returns them in the spring; a thing that often occurs, without the slightest suspicion that the possession has been relinquished. But, in fact, it appears by the evidence that, although Ingleshy did quit in December, Collins entered in January, and held for Howard until March, when he took possession in person. If we are at liberty to join the possessions of the executor of Howard, and of the defendant, which were all in the same right and. continuous, and regard the bill in the same light as if it had been brought by the dowress herself, her right is certainly barred by the statute of limitations.
Are we at liberty to unite the possessions 'I If the defendant succeeded to Howard by inheritance, the possessions of these two may, according to Williams vs. McAlily, (1 Chev. Rep. 200,) be joined together, even if Howard’s possession was a mere trespass, and he had no title; neither of which is true. These two possessions make up a period of more than 20 years before bill filed, and therefore constitute a bar.
But if the defendant came in as purchaser from Howard, there would seem to be some difficulty in annexing his possession to that of his grantee. It appears to have been held at law, in the recent case of King vs. Smith, (Rice’s Rep. 10,) that a defendant cannot avail himself of two or more incomplete statutary possessions ; and that he is not aided by the fact, that the trespassers have successively conveyed to each other. The ground of decision seems to have been, that a trespasser, who has not yet acquired title by his possession, has no title to convey; and that, as his trespass is not the subject of a legal assignment, his grantee takes nothing by his deed; and, therefore, from the time of his entry, stands as a mere trespasser on his own account. We are not to question this decision. But it is conceived that the principle of the decision is not applicable to a case of dower like the present. It is conceded, because it has been so decided, that trespasses cannot be united for the purpose of making out a title. But here the object of coupling the possessions is not to invest the defendant with a title. The necessary concession of the dowress is, that her’s is the title of her husband. Neither is his possession, nor that of Howard, nor of Harrell’s executor, to be regarded in the light of trespasses. There *39 was nothing tortious in them. They were all'lawful occupations, under one and the same title, the perfectness of which the dowress cannot question.; and being justified by that title, there is no reason why Vtlie benefits of the possession should not accompany the title as it passed down to the defendant. This view authorizes the joinder, not only of Howard’s, but of the executor’s possession, to the defendant’s, and gives him an uninterrupted possession from 1823. The identity of title'.in the occupants gives unity to all the possessions under;it,' and the case stands as if one person had held for the-whole time. During the whole time given to the dowress for asserting her right, there was constantly in possession'á succession of persons, not independent of each other, but united by a perfect title, against whom she might have made her claim. Her right was a chose, and not an outstanding independent title, and was so connected with the title of her husband, that she was not at liberty to regard as strangers to each other, and as mere trespassers, those who held successively under that title; and not having asserted, her right against them during the time given her, having full opportunity to do so, she must be barred. It may be objected that the dow-ress was not barred when she conveyed; and the alienees being infants, one of them bom in 1816, and the other in 1823, are shielded from the operation of the statute. The right of dower assigned her was-a mere chose, not assignable at law; and upon such an assignment, the suit at law must be brought in the name of the dowress. The Court could not take notice of the assignment, nor, of course, that it was made to infants; but must apply the statute precisely as if the dowress was the real, as well as the nominal, claimant. In this Court, the assignee may state the assignment and sue in his own name, as assignee. But the right to be perfected is still the assignor’s right, and being a legal and not an equitable one, is subject, of course, to all the incidents which would at law attach to it; and among other things to the legal rule for applying the statute. The case is then as if the dowress were herself the plaintiff in this suit. But if this'were otherwise, it is not perceived that the result could be altered. The possession of the executor of Harrell gave currency to the statute before the dowress conveyed to the infant plaintiffs, in 1826. *40 Independently of the Act of 1824, there seems to he no doubt that when the statute begins to run, it will not be arrested by a supervening disability. Indeed, it was the fact that this doctrine was settled, which gave rise to the Act referred to. The question then is, how far has that Act altered the pre-existing law ? It declares, (Stat. 1824, chap, 6, sec. 5,) that “ the statute of limitations shall not hereafter be construed to defeat the rights of minors, where the statute has not barred the right in the life-time of the ancestor, before the accrual of the right of the minor.” From the phraseology here employed, the rights intended to be protected are, obviously, rights involving the relation of ancestor and descendant, which have terminated in the one by the cessation of his life, and have passed from him, or accrued to the other. They include rights inherited. They may, perhaps, (though that is questionable,) by an enlarged construction, be extended to testamentary rights. But how can this enactment be made to reach a right like dower, which ceases with the “ life-time” of the “ ancestor,” and cannot accrue to the minor descendant, on the anees ’ tor’s death 1 The Legislature may well have intended to secure infants in those interests which have accrued to them in consequence of the death of their parents; where the act of God has at once deprived the parent of the means of vindicating his rights, and transmitted them to his helpless and unprotected children. Such a case might call for legislative compassion. But it would be altogether ■unwarrantable to suppose that the guardians of the public interests intended to put it in the power of any one, by the mere contrivance of making a deed or assignment to infants, to avert the operation of the “statute of repose,” and capriciously, and without necessity, entail upon his opponent a responsibility, the end of twhich no one can foresee.
Dargan for the motion,
Blakeney, contra.
It is ordered that the appeal be dismissed.
J. JOHNSTON.